IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES H. JACKSON, | : | |
|     Plaintiff | : | No. 1:11-cv-1527 |
| | : | |
| v. | : | |
| | : | (Chief Judge Kane) |
| LOUISVILLE LADDER, INC., | : | |
| and W.W. GRAINGER, INC., | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court is Defendants Louisville Ladder and W.W. Grainger's motion for summary judgment (Doc. No. 29), the parties' briefs on whether the Restatement (Second) or (Third) of Torts governs Plaintiff's strict liability claims (Doc. Nos. 49-52), and Defendants' supplement to their motion for summary judgment (Doc. No. 55). For the reasons that follow, the Court will deny Defendants' motion, and will apply the Restatement (Third) of Torts to Plaintiff's strict liability claims.

**I.      BACKGROUND**

Plaintiff James H. Jackson filed the above-captioned diversity action after suffering injuries when he fell off a ladder on September 16, 2009. (Doc. No. 1.) After the Court granted Defendants' motion to dismiss, Plaintiff filed an amended complaint on December 5, 2011. (Doc. No. 16.) In his amended complaint, Plaintiff brought the following three state-law causes of action pursuant to 28 U.S.C. § 1332: (1) a negligence claim against Defendant Louisville Ladder; (2) a strict product liability claim against Defendant Louisville Ladder; and (3) a strict product liability claim against Defendant W.W. Grainger. The following facts of record are undisputed unless otherwise noted.

1

On September 16, 2009, Plaintiff James Jackson was using a Louisville Ladder Model AS2106 6' aluminum stepladder in the course and scope of his employment for Messiah College. (Doc. Nos. 31, 35 ¶ 3.) Messiah College purchased the ladder from W.W. Grainger on November 13, 2008. (Id. ¶ 4.) Plaintiff alleges that while he was standing on the ladder it suddenly malfunctioned and collapsed, causing him to fall and injure his head and cervical spine. (Id. ¶ 5.) The ladder at issue is an aluminum step ladder; the front section of the A-frame ladder has five steps connected to side rails by rivets. (Id. ¶ 7.) There are aluminum gussets connecting the lowest step to the side rails, and folding spreaders connect the front and rear sections of the ladder. (Id.) Plaintiff alleges that he fell because the ladder was defective.

At the time of the incident, Mr. Jackson was 5'4" tall and weighed 150 lbs. (Id. ¶ 8.) Plaintiff indicated that he understands that, in order to properly use a stepladder, the user must separate the front and back sections of the ladder, place the ladder on a flat surface so all four feet are on the floor, and push down and lock the spreaders. (Id. ¶ 9.) He testified that Messiah College purchased the ladder for him and that he stored it in a truck, which he and another employee used in the course and scope of their employment. Mr. Jackson testified that he used the ladder a few times prior to his accident, without incident. (Id. ¶ 10.)

On September 16, 2009, Plaintiff set up his ladder in a room at Messiah College where the ceiling was leaking. (Id. ¶ 13.) After making sure that all four feet were flat on the ground, and that the spreader braces were locked, Mr. Jackson climbed the ladder to the third or fourth step to move the suspending ceiling tiles to allow him to view the ceiling of the room. (Id. ¶¶ 13-15.) He then climbed down the ladder and retrieved a small flashlight from his pouch before climbing back up the ladder, one step at a time, while holding the flashlight in his right hand.

2

(Id. ¶¶ 16-17.) As he stood on the fourth step of the ladder, it felt stiff and did not move while he was on it. (Id. ¶ 18.) While Plaintiff was looking at the ceiling with his flashlight, the ladder started moving slowly and caused Plaintiff to fall to the floor. (Id. ¶ 20.) After staying on the ground for an unknown period of time, Mr. Jackson got up and drove himself to his employer's safety department. (Id. ¶ 22.)

In support of his negligence and strict liability claims, Plaintiff produced an August 23, 2012 report authored by Jack Vinson, Ph.D., P.E. and James L. Glancey, Ph.D., P.E. of Structural Mechanics Associates. (Doc. No. 31-5.) After examining and testing the subject ladder, reviewing design drawings, photographs, deposition testimony, and other data, Drs. Vinson and Glancey opined that: (1) the ladder rails and steps were defectively manufactured; (2) the quality control methods employed during manufacturing and after manufacturing were inadequate; (3) the subject ladder design is deficient in that foreseeable loads cause stresses to nearly reach or exceed the yield strength of the materials used in the design; (4) the ladder manufacturer failed to perform any structural analysis to determine if the ladder is structurally sound and safe; (5) a reasonable and prudent designer, manufacturer, and marketer of ladders would not have allowed the subject ladder to be produced and put on the market because the ladder was "under designed;" (6) Louisville Ladder's testing of the subject ladder was inadequate to determine that it was structurally adequate and safe; and (7) because of any or all of these defects, the subject ladder should never have entered the stream of commerce, and the collective effects of these defects led to the ladder's collapse and ultimately to Mr. Jackson's injuries. (Id. at 8-9.) Specifically, Plaintiff's experts found that the bottom step of the ladder failed, bending upward, leading to the failure of the adjacent shear brace and left front leg.

On October 4, 2012, Defendants filed a motion in limine to preclude the testimony of Plaintiff's liability experts. (Doc. No. 32.) That same day, Defendants filed a motion for summary judgment, arguing that Plaintiff's claims must fail because Plaintiff failed to produce sufficient expert evidence to support a strict liability or negligence claim. (Doc. No. 29.) The Court held a Daubert hearing on Defendant's motion in limine on January 10, 2013, and denied the motion on April 22, 2013. (Doc. No. 53.) In the interim, on March 26, 2013, the Pennsylvania Supreme Court granted allocatur in Tincher v. Omega Flex, Inc., 64 A.3d 626 (Pa. 2013), to determine whether it "should replace the strict liability analysis of Section 402A of the Second Restatement with the analysis of the Third Restatement." Therefore, the Court issued an order permitting Defendants to supplement their motion for summary judgment in light of the disposition of their motion in limine, and in light of the decision by the Pennsylvania Supreme Court to grant allocatur in Tincher. (Doc. No. 54.) Thus, Defendants supplemented their motion for summary judgment on May 10, 2013, and Plaintiff filed an opposition thereto on May 21, 2013. (Doc. Nos. 55, 58.)

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient

4

disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

Defendants move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 29.) In support of their original motion for summary judgment, Defendants argue that: (1) Plaintiff's failure-to-warn claims should be dismissed because Plaintiff has failed to produce expert testimony in support of the claims; (2) Plaintiff's manufacturing defects claims should be dismissed because Plaintiff's experts cannot state that any manufacturing defect caused his injuries; and (3) Plaintiff's design-defect claims should be dismissed because the expert testimony upon which he relies is insufficient and because his experts cannot establish a causal link between the alleged defect and his accident. (Doc. No. 30.) Plaintiff does not oppose Defendants' motion with respect to his failure to warn and manufacturing defects claims, but argues that he has produced sufficient evidence to support a design-defect claim. (Doc. No. 36 at 2; Doc. No. 58 at 1.) Thus, the Court will grant Defendants' motion as unopposed with respect to Plaintiff's failure-to-warn and manufacturing defects claims.

Defendants' original summary judgment motion was based, in large part, on their argument that Plaintiff's liability experts should be precluded from testifying. However, the Court has denied Defendants' Daubert motion, and permitted Defendants an opportunity to submit supplemental briefing. In their supplemental brief, Defendants argue that Plaintiff cannot establish a defect in the ladder, and cannot establish a causal link between the alleged defect and his accident. (Doc. No. 56.) Plaintiff's negligence and strict product liability claims against Defendant Louisville Ladder, and his strict product liability claim against Defendant W.W. Grainger, arise out of allegations that the ladder at issue was defectively designed. (Doc. No. 16

6

¶¶ 37-54.) Plaintiff argues that reasonable minds could find in his favor on his design-defect claims. (Doc. No. 58 at 15.) The Court will first address Plaintiff's strict liability claims, followed by a discussion of his negligence claim.

### A. Strict Liability

In his amended complaint, Plaintiff brings a strict liability design-defect claim against Louisville Ladder and a separate strict liability design-defect claim against W.W. Grainger. (Doc. No. 16 ¶¶ 40-54.) Defendants argue that "a risk-utility analysis of the ladder leads to the inescapable conclusion that the ladder is not unreasonably dangerous." (Doc. No. 56 at 13.)

Prior to reaching Defendants' argument, which assumes the application of the Restatement (Third) of Torts to Plaintiff's strict liability claims, the Court must determine whether the Restatement (Second) or (Third) applies to Plaintiff's strict liability claims.[1] The parties do not dispute that the substantive law of Pennsylvania applies to Plaintiff's strict liability claims. See 28 U.S.C. § 1332(a)(1); Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). However, federal district courts sitting in diversity jurisdiction have offered differing opinions as to whether the Restatement (Second) of Torts or the Restatement (Third) of Torts governs Pennsylvania strict liability claims. Compare Vaskas v. Kenworth Truck Co., No. 3:10-cv-1024, 2013 WL 101612, at *6 (M.D. Pa. Jan. 8, 2013), amended on reconsideration on other grounds, 2013 WL 1126022 (M.D.

---

[1] In his brief, Plaintiff references Section 402(A) of the Restatement (Second) of Torts as the applicable strict liability standard, whereas Defendants reference Sections 1 and 2 of the Restatement (Third) of Torts. (See Doc. No. 36 at 9; Doc. No. 30 at 9 n.7.) On January 11, 2013, the Court ordered Plaintiff to show cause as to why the Restatement (Third) should not apply. (Doc. No. 47.) Plaintiff filed a response to the Court's order, and Defendants filed a response thereto. (Doc. Nos. 49, 50.) Plaintiff and Defendants also filed supplemental briefs to notify the Court of recent district court decisions related to the issue. (Doc. Nos. 51, 52.)

7

Pa. Mar. 18, 2013) (holding that Sections 1 and 2 of the Restatement (Third) of Torts govern strict liability claims), with Sikkelee v. Precision Airmotive Corp., 876 F. Supp. 2d 479, 490 (M.D. Pa. 2012), leave to appeal denied, No. 12-8081, 2012 WL 4953074 (3d Cir. Sept. 14, 2012) (holding Section 402A of the Restatement (Second) of Torts is the applicable standard for strict liability claims), and Gilmore v. Ford Motor Co., No. 2:12-cv-00547, 2013 WL 869382 (W.D. Pa. Mar. 7, 2013) (same). "The question of which Restatement governs is important because the Restatement (Third) differs notably from its predecessor by integrating certain negligence concepts into its analysis. In contrast, Pennsylvania's product's liability structure under the Restatement (Second) forbids a court to consider negligence principles." Sansom v. Crown Equip. Corp., 880 F. Supp. 2d 648, 654 (W.D. Pa. 2012) (internal citations omitted).

In 1966, the Pennsylvania Supreme Court adopted Section 402A of the Restatement (Second) of Torts as the applicable law of strict liability claims in Pennsylvania. Webb v. Zern, 220 A.2d 853, 854 (Pa. 1966). Section 402A provides that a seller of a defective product is liable for harm caused thereby, regardless of fault. Restatement (Second) of Torts § 402A (1965). Under the Restatement (Second) approach, charging courts are to avoid negligence concepts in their instructions. Azzarello v. Black Bros. Co., 391 A.2d 1020, 1025-26 (Pa. 1978). However, the Pennsylvania Supreme Court has addressed a conflict between Section 402A's instruction to ignore evidence that the seller exercised all possible care and the requirement that a defective product be "unreasonably dangerous." Covell v. Bell Sports, Inc., 651 F.3d 357, 361 (3d Cir. 2011) (citing Schmidt v. Boardman Co., 11 A.3d 924, 940 (Pa. 2011) ("This no-negligence-in-strict-liability rubric has resulted in material ambiguities and inconsistency in

Pennsylvania's procedure."); Phillips v. Cricket Lighters, 841 A.2d 1000, 1015-16 (Pa. 2003) (Saylor, J., dissenting)).

In 1998, the American Law Institute published the Restatement (Third) of Torts, which essentially abandons the distinction between strict liability and negligence in products liability cases by embracing a risk-utility analysis in determining whether a product is defective:

> § 1: Liability of Commercial Seller or Distributor for Harm Caused by Defective Products
>
> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.
>
> § 2: Categories of Product Defect
>
> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
>
>> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
>>
>> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
>>
>> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts §§ 1, 2 (1998).

While the Pennsylvania Supreme Court recently applied the provisions of the Restatement (Second) to a strict products liability claim, e.g., Reott v. Asia Trend, Inc., 55 A.3d 1088 (Pa. 2012), it has yet to offer a definitive statement as to whether Sections 1 and 2 of the Restatement (Third) are the proper test for strict liability claims. The court recently granted allocatur in Tincher v. Omega Flex, Inc., 64 A.3d 626 (Pa. 2013), to determine whether the it should replace the strict liability analysis of Section 402A of the Restatement (Second) with the analysis of the Restatement (Third).

The Pennsylvania Supreme Court's grant of allocatur is not a definitive indication that it will adopt the Third Restatement; however, the Third Circuit has predicted that "if the Pennsylvania Supreme Court were confronted with this issue, it would adopt the Restatement (Third) of Torts, §§ 1 and 2." Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 40 (3d Cir. 2009). In 2011, the Third Circuit reaffirmed this position, explicitly stating that "federal district courts applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts." Covell, 651 F.3d at 359. In October 2012, the Third Circuit again expressed its view that the Restatement (Third) is the applicable standard, albeit in dicta. Sikkelee v. Precision Airmotive Corp., 12-8081, 2012 WL 5077571 (3d Cir. Oct. 17, 2012) (denying a petition for a rehearing) ("The Pennsylvania Supreme Court has not issued a definitive opinion on whether the Restatement (Third) of Torts or the Restatements (Second) of Torts and applies to strict liability and product defect cases. Accordingly, we will follow the precedent set out in Covell and Berrier.").

"Once the United States Court of Appeals for the Third Circuit predicts how a state's highest court would resolve an issue, district courts within the circuit are bound by this prediction 'unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred.'" Vaskas, 2013 WL 101612, at *6 (quoting Largoza v. Gen. Elec. Co., 538 F.Supp. 1164, 1166 (E.D. Pa. 1982) (citing Doane v. Travelers Ins. Co., 266 F. Supp. 504, 405 (E.D. Pa. 1966))). Because the Third Circuit has made a prediction on this issue, and the Pennsylvania Supreme Court has not offered a definitive answer, the Court will follow the guidance of the Third Circuit and apply Sections 1 and 2 of the Restatement (Third) to Plaintiff's strict liability claims.

Therefore, to succeed on his strict liability design-defect claims, Plaintiff must establish that Defendants sold or distributed the ladder at issue, that "the foreseeable risks of harm posed by the [ladder] could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe," and that he was injured by the defect. Restatement (Third) of Torts §§ 1, 2(b). Thus, Plaintiff must prove that a reasonable alternative design was, or reasonably could have been available at the time of the sale. Id. § 2(b), cmt. d.

Plaintiff's liability expert, Dr. Jack Vison, has offered his opinion that the ladder at issue is defective, and that "[t]here are a multitude of alternate designs that could have been used which would have resulted in a safe structure that would have prevented Mr. Jackson's injuries." (Doc. No. 31-5 at 7.) Dr. Vinson goes on to offer three alternative designs that he opines would have been safer. The primary design that he proposes involves increasing the thickness of the

11

flanges and web of the first step, and increasing the thickness of the four shear braces on the ladder. (Id. at 7-8.) Dr. Vinson opines that this alternative design would increase the weight of the ladder by five pounds, and would make the design structurally safe for its intended purposes. (Id. at 8.)

Defendants argue that this is insufficient evidence to support a design-defect claim, because Plaintiff has not created a prototype of the design, and cannot identify a single other ladder manufacturer that uses the design. (Doc. No. 56 at 14.) However, the comments to the Restatement (Third) make clear that a plaintiff may rely on expert testimony that the alternative design could have been practically adopted at the time of sale, even where the expert has not produced a prototype. Restatement (Third) of Torts § 2, cmt. f ("[Q]ualified expert testimony on the issue suffices, even though the expert has produced no prototype, if it reasonably supports the conclusion that a reasonable alternative design could have been practically adopted at the time of sale."). To the extent that Defendants are arguing that Dr. Vinson's proposed alternative design could not have reasonably been adopted at the time of sale, that issue should be determined by a jury. See id. ("Sufficient evidence must be presented so that reasonable persons could conclude that a reasonable alternative could have been practically adopted. Assuming that a court concludes that sufficient evidence on this issue has been presented, the issue is then for the trier of fact."). The Court is satisfied that Plaintiff has presented sufficient evidence to permit this issue to survive Defendants' motion for summary judgment.[2]

---

[2] Defendants also argue that Dr. Vinson's alternative design merely makes their "already safe product slightly safer." (Doc. No. 56 at 14.) However, Plaintiff's experts opine that the ladder at issue was not safe because "foreseeable loads cause stresses to nearly reach and/or exceed the yield strength to the material with design." (Doc. No. 31-5 at 9.) Again, whether foreseeable risks of harm could have been reduced through the adoption of an alternative design

12

Next, Defendants argue that Plaintiff cannot prove that the ladder at issue failed while Plaintiff was standing on the fourth step of the ladder. (Doc. No. 56 at 15.) Thus, Defendants argue that Plaintiff cannot establish the causal connection in this case. However, Mr. Jackson's testimony supports a finding of causation, and the true cause of the accident constitutes a material issue of fact. Plaintiff's testimony at his deposition is that he set up the ladder, and ensured that all four feet were flat on the ground and that the spreader braces were locked. (Doc. No. 31-3 at 14-24.) After setting up the ladder, Mr. Jackson climbed the ladder to the third or fourth step to move the suspending ceiling tiles to allow him to view the ceiling of the room. (Doc. Nos. 31, 35 ¶¶ 13-15.) He then climbed down the ladder and retrieved a small flashlight from his pouch before climbing back up the ladder, one step at a time, while holding the flashlight in his right hand. (Id. ¶¶ 16-17.) As he stood on the fourth step of the ladder, it felt stiff and did not move while he was on it. (Id. ¶ 18.) While Plaintiff was looking at the ceiling with his flashlight, the ladder started moving slowly and caused Plaintiff to fall to the floor. (Id. ¶ 20.)

Plaintiff's liability experts opined that the ladder collapsed while Mr. Jackson was using it in a foreseeable manner, and that "the collective effects of all the design . . . defects led to the structural failure and are the proximate cause of Mr. Jackson's injuries." (Doc. No. 31-5 at 8-9.) Although Defendants disagree, these factual issues must be presented to a jury; this material factual dispute precludes summary judgment. Thus, the Court will not grant summary judgment in Defendants' favor on Plaintiff's strict liability claims.

---

is ultimately an issue for a jury; the Court is satisfied that a reasonable jury could find in favor of Plaintiff on this issue.

### A. Negligence

In his negligence claim against Defendant Louisville Ladder, Plaintiff alleges, inter alia, that Louisville negligently sold the subject ladder in a defective, unreasonably dangerous condition, and failed to exercise reasonable care in designing and testing the ladder.[3] (Doc. No. 16 ¶ 38.) To establish liability for negligence, a plaintiff "must show that the defendant had a duty to conform to a certain standard of conduct, that the defendant breached that duty, that such breach caused the injury in question, and actual loss or damage." Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009) (quoting Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003)). "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000).

With respect to Plaintiff's negligence claim, Defendants argue that summary judgment must be entered in a negligence claim where summary judgment has been entered on strict liability claims under the Restatement (Third). However, the Court declines to enter summary judgment on Plaintiff's strict liability claims. As discussed above, Plaintiff's experts assert that the subject ladder failed due to a design defect, while Defendants' expert disagrees. Plaintiff's

---

[3] In his negligence claim, Plaintiff also alleges that the ladder was negligently manufactured and contained inadequate warnings; however, Plaintiff does not oppose Defendants' motion for summary judgment with respect to those allegations. Thus, the Court will not address those portions of Plaintiff's negligence claim.

experts' report contains opinions that the design of the ladder at issue is deficient, that a reasonable and prudent designer would not have allowed the ladder to be produced in this way, and that the collective effects of these defects led to the structural failure of the ladder and are the proximate cause of Plaintiff's injuries. (Doc. No. 31-5 at 9.)  A jury question remains as to the factual cause of Plaintiff's accident and as to whether the ladder at issue is defective.  For the same reasons that the Court will deny Defendants' summary judgment motion with respect to Plaintiff's strict liability claims, the Court will deny the motion with respect to Plaintiff's negligence claim.  See Restatement (Third) of Torts § 2 cmt. d ("Assessment of a product design in most instances requires a comparison between an alternative design and the product design that caused the injury, undertaken from the viewpoint of a reasonable person.  That approach is also used in administering the traditional reasonableness standard in negligence.").

## IV. CONCLUSION

For the reasons set forth above, the Court will deny Defendants' motion for summary judgment with respect to Plaintiff's design-defect claims.  The Court will, however, grant Defendants' motion for summary judgment as unopposed with respect to Plaintiff's manufacturing defect and warning defect claims.  An order consistent with this memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES H. JACKSON, | : | |
|     Plaintiff | : | No. 1:11-cv-1527 |
| | : | |
|     v. | : | (Chief Judge Kane) |
| LOUISVILLE LADDER INC., | : | |
| and W.W. GRAINGER, INC., | : | |
|     Defendants | : | |

## **ORDER**

**AND NOW**, on this 11th day of July 2013, for reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment (Doc. No. 29) and Defendants' supplement to their motion for summary judgment (Doc. No. 55) are **DENIED IN PART** and **GRANTED AS UNOPPOSED IN PART**, as follows:

1. The motion is **GRANTED AS UNOPPOSED** to the extent that it seeks dismissal of Plaintiff's manufacturing defect and warning defect claims; and

2. The motion is **DENIED** with respect to Plaintiff's design-defect claims.

The Clerk of Court is directed to defer entry of judgment until the final disposition of all claims.

                                                                              S/ Yvette Kane
                                                                              Chief Judge Yvette Kane
                                                                              United States District Court
                                                                               Middle District of Pennsylvania